**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> AUGUST L. HOLTHAUS, JR. <br><br> Defendant. | No. 05-CR-2022-LRR <br><br> **SENTENCING MEMORANDUM** |

## *I. INTRODUCTION*

In this sentencing, the court must decide two important legal issues. First, in calculating Defendant August L. Holthaus's advisory Sentencing Guidelines range,[1] the court must decide whether Defendant is subject to a six-level increase pursuant to USSG

---

[1] Although application of the Sentencing Guidelines is no longer mandatory, [in the Eighth Circuit] district courts are still required to consult the Guidelines and take them into account in calculating a defendant's sentence. A district court must calculate a defendant's advisory Guidelines sentencing range based on his total offense level, criminal history category, and any appropriate departures. The court may also vary from the advisory Guidelines range based on the factors set forth in 18 U.S.C. § 3553(a) as long as the resulting sentence is reasonable. Proper application of the Guidelines "remains the critical starting point" for fashioning a reasonable sentence under § 3553(a), and a sentence within the properly calculated Guidelines range is presumed to be reasonable.

*United States v. Jeremiah*, 446 F.3d 805, 807 (8th Cir. 2006) (citing, in part, *United States v. Booker*, 543 U.S. 220, 264 (2005)).

§2B1.1(b)(1)(D) for an amount of loss of more than $30,000 but less than $70,000. Second, the court must decide whether a bankruptcy trustee qualifies as a victim and is eligible for restitution under the Mandatory Victims Rights Act ("MVRA"), 18 U.S.C. § 3663(a)(2).

## II. PROCEDURAL BACKGROUND

On July 27, 2005, a grand jury charged Defendant in a one-count Indictment. The government alleged Defendant knowingly and fraudulently made a material false declaration under penalty of perjury in relation to his voluntary bankruptcy petition, in violation of 18 U.S.C. § 152(3).

On September 15, 2005, Defendant pled guilty. There was no plea agreement with the government. On September 30, 2005, the court accepted Defendant's guilty plea.

On March 23, 2006, the United States Probation Office ("USPO") prepared a Presentence Investigation Report ("PSIR"). On April 19, 2006, the USPO revised the PSIR. On May 24 and 30, 2006, the government and Defendant filed their respective sentencing memoranda. On June 6, 2006, Defendant filed a supplement to his sentencing memorandum ("First Supplemental Sentencing Memorandum").[2]

On June 7, 2006, sentencing proceedings in this matter commenced at a hearing ("Hearing") held before the undersigned. Assistant United States Attorney Ian Thornhill represented the government. Defendant was personally present and represented by Attorney Mark Meyer. The Hearing is scheduled to conclude on July 6, 2006, at 11 a.m. When the Hearing resumes, the court shall pronounce sentence in a manner consistent with the instant Sentencing Memorandum.

---

[2] Defendant was required to submit his completed sentencing memorandum on or before May 31, 2006 at 8:00 a.m. Although the First Supplemental Sentencing Memorandum is untimely, the court shall consider it.

On June 8, 2006, Defendant filed a second supplement to his sentencing memorandum ("Second Supplemental Sentencing Memorandum").[3]

## IV.  THE MERITS

### A.  The Loss

The applicable sentencing guideline for Defendant's violation of 18 U.S.C. § 152(3) is §2B1.1 (2001).  *See* Guidelines Manual at Appendix A—Statutory Index.  In pertinent part, this guideline states:

> **§2B1.1. Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States**
>
> 1. (a) Base Offense Level: 6
>
>    (b) Specific Offense Characteristics
>
>    > (1) If the loss exceeded $5,000, increase the offense level as follows:
>
>    | Loss (Apply the Greatest) | Increase in Level |
>    |---|---|
>    | (A) $5,000 or less | no increase |
>    | (B) More than $5,000 | add 2 |
>    | (C) More than $10,000 | add 4 |
>    | (D) More than $30,000 | add 6 |

---

[3] Defendant was required to submit his completed sentencing memorandum on or before May 31, 2006 at 8:00 a.m.  Although the Second Supplemental Sentencing Memorandum is untimely, the court shall consider it.

(E)  More than $70,000    add 8

USSG §2B1.1(b)(1) (emphasis in original).  The USPO posits that the "loss" in this case is $54,478.57.  The USPO thus advises the court to impose a six-level increase, resulting in an adjusted base offense level of 12.  Defendant contends the loss is "less than $10,000," and, therefore, only a two-level increase is warranted.[4]

Determining the amount of "loss" for purposes of USSG §2B1.1(b)(1) is often a murky and complicated affair.  Some settled rules are established in the Eighth Circuit.  Most importantly, the amount of loss for purposes of USSG §2B1.1 is the greater of the actual loss or the intended loss.  *United States v. Porter*, 417 F.3d 914, 917 (8th Cir. 2005); USSG §2B1.1 cmt. (n.2).  Thus, in a bankruptcy fraud case, "the district court should use the probable or intended loss the defendant meant to inflict, if that amount can be determined and if it is larger than the amount of the actual loss."  *United States v. Dolan*, 120 F.3d 856, 870 (8th Cir. 1997) (citations omitted) (interpreting predecessor sentencing guideline USSG §2F1.1).[5]  "The district court should calculate the actual or intended loss amount by using either the value of the assets concealed or the value of the debtor's liabilities, whichever is less."  *Id.*[6]

---

[4] In addition to these figures, the parties agree that an additional two-level increase is warranted because the offense involved "a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding," *see* USSG §2B1.1(b)(7)(B), and a two-level decrease is warranted for acceptance of responsibility, *see* USSG §3E1.1(a).

[5] USSG §2F1.1 was deleted by consolidation with USSG §2B1.1 effective November 1, 2001.  The Application Notes to USSG §2F1.1 stated that "[v]aluation of loss is discussed in the Commentary to §2B1.1."  USSG §2F1.1, cmt. (n.1).

[6] Defendant sought discharge of over $200,000 in debts.  This figure is significantly higher than any allegation of actual loss or intended loss.  Therefore, only actual and

(continued…)

"Actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." USSG §2B1.1, cmt. (n.2). "Intended loss" is defined as "the pecuniary harm that was intended to result from the offense." *Id*. Intended loss "includes intended pecuniary harm that would have been impossible or unlikely to occur . . . ." *Id*.

The government bears the burden to prove a USSG §2B1.1(b)(1) sentence enhancement by a preponderance of the evidence. *See United States v. Russell*, 234 F.3d 404, 408 (8th Cir. 2000) ("At sentencing, the government has the burden of proof on disputed facts, and generally must satisfy a preponderance of the evidence standard").[7] The amount of the loss, however, need not be determined with precision. *See, e.g., United States v. French*, 46 F.3d 710, 715 (8th Cir. 1995). "The court need only make a reasonable estimate of the loss." USSG §2B1.1, cmt. (n.2).

The government concedes that there was no actual loss in this case, because the bankruptcy court denied Defendant discharge and Defendant's unsecured creditors thus did not suffer any harm. For this reason, the government contends the loss is the intended loss, i.e., the value of the assets concealed. *See, e.g., United States v. Wheeldon*, 313 F.3d 1070, 1072 (8th Cir. 2002) (approving of same analysis). The government posits that the intended loss in this case is the sum of the value of assets and income Defendant concealed, or $54,478.57. It is undisputed that Defendant concealed the following assets and income: a $5,000 tractor, a $4,000 cabin, a $36,023.35 inheritance, $7,855.22 in

---

[6](…continued)
intended losses are discussed here.

[7] In his First Supplemental Sentencing Memorandum and at the Hearing, Defendant argued the government should be held to the higher beyond-a-reasonable doubt standard. Defendant cites no controlling authority that requires the court to apply such a standard. Therefore, the court shall continue to apply a preponderance standard.

accounts receivable, $1400 in gambling winnings and a $200 shotgun.

Defendant denies that he intended to inflict a loss upon his creditors when he concealed all of these assets and income, except for the accounts receivable and the shotgun. Therefore, Defendant admits he intended that his creditors lose $8,055.22 and, therefore, a two-level increase is warranted pursuant to USSG §2B1.1(b)(1)(B) (providing for two level increase for an amount of loss between $5,000 and $10,000). The fighting issues are whether Defendant intended to inflict a loss upon his creditors when he concealed the other items, i.e., the tractor, the cabin, the inheritance and the gambling winnings.

### *1. Tractor*

In his bankruptcy proceeding, Defendant concealed the fact that he owned a $5,000 tractor. Defendant contends he could not have intended to deprive his creditors of $5,000 because he knew he also owed $5,000 on the tractor. Defendant's counsel writes that Defendant "signed the loan so [he] knew that the tractor was fully encumbered. Therefore there was no actual or intended loss to the bankruptcy creditors with respect to this asset." Defendant notes that he did not seek discharge of the $5,000 debt on the truck in his bankruptcy petition.

*Dolan* counsels that to determine the intended loss, the court may consider "the value of the assets concealed." *Dolan*, 120 F.3d at 870. Defendant cites no legal authority for his argument that the "value of the assets concealed" is calculated by taking the appraised value of the asset and subtracting any encumbrances on the asset. The government cites no legal authority to the contrary, and the court can find no cases on point.

According to the guidelines, "intended loss" "means the pecuniary harm that was *intended* to result from the offense." USSG §2B1.1, cmt. (n.2) (emphasis added). It

includes "harm that would have been impossible or unlikely to occur . . . ." *Id.* The issue, then, is not what loss Defendant could have imposed upon his creditors, but rather what loss he intended to impose upon them. *See id.* Furthermore, the court may "use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined." *Id.* Estimates of loss may be based on factors such as "[t]he fair market value of the property taken." *Id.*

The court finds that Defendant intended that the creditors in his bankruptcy proceeding suffer a $5,000 loss when he failed to disclose his $5,000 tractor. *See Dolan*, 120 F.3d at 870. In this case, the court finds that the value of the assets concealed is the best evidence of the intended loss, not the value minus any outstanding encumbrances. The court is "not bound to accept [a defendant's] self-serving assertions at sentencing that he intended no loss to his creditors." *Id.* at 871.

### 2. Cabin

Defendant purchased a cabin on contract. The value of the cabin was $15,000. Defendant made $4,000 worth of payments on the contract, but eventually defaulted. Defendant did not disclose his interest in the cabin on his bankruptcy petition.

Defendant opines that he "had no equity" in the cabin, and the government cannot simply assume "there was some mechanism available to avoid defaulting on the contract and that someone would have been willing to assume the contract for the cabin." Defendant points out he ultimately defaulted on the contract and lost any interest he had in it. The government completely ignores this argument in its sentencing memorandum.

Defendant's objection lacks merit. Under Iowa law, Defendant clearly had equity in the property:

> [W]hen the vendee contracts to buy and the vendor to sell, though legal title has not yet passed, in equity the vendee becomes the owner of the land, [and] the vendor of the

7

> purchase money. In equity the vendee has a real interest and the vendor a personal interest. Equity treats the executory contract as a conversion, whereby an equitable interest in the land is secured to the purchaser for whom the vendor holds the legal title in trust. This is the doctrine of equitable conversion.
>
> By the doctrine of equitable conversion under an executory contract of sale, the equitable estate, in its entirety, passes immediately to the purchaser at the moment the contract becomes effective and the bare legal title for security purposes remains in the vendor. The purchaser of the land is looked on and treated as the owner thereof, and the vendor, though holding the legal title, holds it as a trustee for the purchaser, and the vendee holds the purchase money in trust for the vendor.

*Krotz v. Sattler*, 586 N.W.2d 336, 339 (Iowa 1998) (citation and internal quotation omitted). The court finds that, at the time Defendant made his false statement in the bankruptcy proceeding, Defendant intended to pay off the contract and thus shield his $4000 equitable interest in the property from his unsecured creditors. The fact that Defendant concealed the asset is evidence that he intended to defraud his creditors. *See Dolan*, 120 F.3d at 870. It does not matter whether, in fact, the contract at issue permitted the bankruptcy trustee to sell Defendant's contract to another purchaser; the question is simply one of intent. The court is "not bound to accept [a defendant's] self-serving assertions at sentencing that he intended no loss to his creditors." *Id.* at 871.

### 3. *Inheritance*

In November of 2001, Defendant received a $36,023.35 inheritance from his late mother. Defendant asserts that he spent the entire inheritance before he filed for bankruptcy in November of 2002. Defendant points out that he made a number of purchases after receiving the inheritance and claims this is circumstantial evidence that he

did, in fact, spend his entire inheritance. Defendant thus claims he did not intend for his creditors to lose anything when he omitted mention of this income, because he knew he had spent it already. Again, the government ignores this argument in its sentencing memorandum.

The bankruptcy petition required Defendant to list all income other than income from employment or operation of a business that he received in the two years preceding the bankruptcy filing. The court finds that the fact that Defendant failed to disclose the inheritance in his bankruptcy petition is evidence that he intended to defraud his creditors of $36,023.35. *See Dolan*, 120 F.3d at 870. By hiding the inheritance, Defendant hindered the trustee and bought himself time to spend the inheritance. Had the trustee found out about the inheritance right away, the trustee may have been able to recoup some of the creditors' losses; indeed, this is the very reason why the bankruptcy statutes require persons to not only disclose their assets, but also recent income.

Moreover, Defendant's explanation that he spent his entire inheritance before filing his bankruptcy petition is self-serving. The court is "not bound to accept [a defendant's] self-serving assertions at sentencing that he intended no loss to his creditors." *Id.* at 871. Indeed, it is unclear precisely when and where Defendant claims he spent all of the inheritance.

For all of the foregoing reasons, the court finds Defendant's self-serving assertions not credible and finds Defendant intended to inflict a loss of $36,023.35 upon his creditors when he failed to disclose his inheritance in his bankruptcy petition.

### 4. Gambling winnings

Defendant earned $1,400 in gambling income within the two years preceding his bankruptcy petition, but failed to disclose this income on his bankruptcy petition. Defendant argues he did not intend for his creditors to lose the $1,400 because he "spent

9

the gambling winnings. . . . Accordingly, there was no actual loss to the creditors from not listing this asset, and, because he knew the winnings has been spent and were not available, there was no intended loss, either." Defendant does not cite any legal authority for his argument. Yet again, the government ignores Defendant's argument in its sentencing memorandum.

The court finds that the fact the gambling winnings were not disclosed is evidence that Defendant intended to defraud his creditors of $1,400. *See Dolan*, 120 F.3d at 870. The court is not bound to accept Defendant's self-serving explanations for why he did not intend to defraud his creditors. *Id*. The court finds that Defendant intended to inflict a loss of $1,400 upon his creditors when he failed to disclose his gambling winnings on his bankruptcy petition.

### 5. *Conclusion*

When one adds the amount Defendant admits he intended that his creditors lose, i.e., $8,055.22, and adds it to the amount of the tractor, the inheritance, the cabin and the gambling winnings, i.e., $5,000, $36,023.35, $4,000 and $1,400, one arrives at a total intended loss of $44,478.57. When sentencing resumes, the court shall find that Defendant is thus subject to a six-level increase, resulting in an adjusted base offense level of 12. USSG §2B1.1(b)(1)(D).

### B. *Restitution*

The USPO recommends that the court order Defendant to pay Renee Hanrahan, a bankruptcy trustee, $8,393.02 for legal work she unnecessarily expended as a direct and proximate result of Defendant's lies in his bankruptcy petition. Defendant claims Hanrahan is a government agent and therefore is not entitled to restitution.

In his sentencing memoranda and at the Hearing, Defendant relied on the fact that the Eighth Circuit Court of Appeals had not decided whether the government qualifies as

10

a victim under 18 U.S.C. § 3663A(2). *United States v. Ruff*, 420 F.3d 772, 774 (8th Cir. 2005). After the Hearing, however, the Eighth Circuit Court of Appeals held that a government agency may qualify as a victim under the MVRA. *See United States v. Senty-Haugen*, 448 F.3d 862, 865 (8th Cir. 2006) (holding IRS qualifies as a "victim" under the MVRA). To the extent Defendant relies on *Ruff*, Defendant's argument is misplaced.

Defendant's contention that a bankruptcy trustee is not a "victim" under the MVRA is not only inconsistent with *Senty-Haugen*, but also contrary to the plain language of the statute and the weight of authority. The MVRA states:

> (a)(1) Notwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense or, if the victim is deceased, to the victim's estate.
>
> (2) For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. . . .

18 U.S.C. § 3663A. Nothing in the MVRA says that a bankruptcy trustee cannot be a victim, i.e., "a person directly and proximately harmed as a result of the commission of an offense." *Id.* Where the language of a statute is plain and unambiguous, the court must read the statute as it is written. *See, e.g., Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286, 302 (1993); *United States v. McAllister*, 225 F.3d 982, 986 (8th Cir. 2000). Other circuit courts, therefore, have held that a bankruptcy trustee can qualify

as a victim under the MVRA. *See, e.g., United States v. Lowell*, 256 F.3d 463, 465-66 (7th Cir. 2001) (recognizing bankruptcy trustee was a victim under the MVRA and affirming award to trustee of $25,906.25 because "trustee was required to spend approximately 207 unnecessary hours in this case as a direct result of [the defendant's] fraudulent statements on the bankruptcy petition and schedules"); *United States v. Paradis*, 219 F.3d 22, 25 (1st Cir. 2000) (recognizing that a trustee may be a victim of bankruptcy fraud). For example, the Seventh Circuit Court of Appeals wrote:

> The plain language of this statute suggests to us that the trustee was indeed a victim of Lowell's fraudulent statements on CDM's bankruptcy petition which, again, he admitted were made to conceal assets. The bankruptcy code provides for the employment of private attorneys as bankruptcy trustees in all districts and empowers them to administer bankruptcy cases filed in those districts. *See* 11 U.S.C. § 321 *et seq*. The trustee in our case, a private attorney, was a chapter 7 "panel bankruptcy trustee" called into service by the United States Trustee's Office. In addition to her duties as a panel trustee, she retains her private bankruptcy practice. For this reason, a panel trustee is in a far different position than are direct, full-time, government employees. Lowell's argument, which attempts to analogize the trustee here to governmental employees (like an IRS auditor or a governmental investigator) who are not entitled to restitution for performing their duties, misses the mark. Moreover, Lowell's analogy also fails for the reason identified by Judge Murphy in the district court at the resentencing hearing:
>
>> that [the government has] investigating agents and prosecuting attorneys implies that there is wrongdoing criminal conduct in the first place and that's the reason they're there. The bankruptcy scheme, on the other hand, doesn't suggest that there is wrongdoing or criminal conduct. Rather, it is expected that everyone will conduct themselves

12

> straightforwardly and honestly and testify truthfully and debts will be discharged and creditors will be paid and security interest will be recognized and commerce will go on . . . So . . . I don't think your analogy holds.
>
> Bankruptcy panel trustees are, of course, compensated for their services. In addition to a . . . fee paid to the trustee by the government for every bankruptcy case she closes, a panel trustee's compensation in a given case is based upon a percentage of the value of the assets liquidated and disbursed to the estate's creditors. It is obvious, therefore, that when Lowell fraudulently misstated the extent of CDM's assets in the admitted effort to conceal them from the trustee, he "directly and proximately harmed" the trustee herself, as the fraud prevented her from easily identifying, seizing, liquidating, and dispersing the concealed assets. This, of course, reduced her compensation and increased her costs.

*Lowell*, 256 F.3d at 465-66.

At the Hearing, the government proved that Defendant's lies in his bankruptcy petition caused Hanrahan to spend 51.9 unnecessary hours at a rate of $150 per hour, for a total uncompensated loss of $7,785. Hanrahan testified that she spent 53.9 hours working on the bankruptcy. She estimated that, if Defendant had not lied on his bankruptcy petition, she would only have spent two hours working on the case. She testified she spent the additional time trying to uncover assets and income that were not disclosed in Defendant's bankruptcy petition as a result of Defendant's lies. Hanrahan also spent $308.02 in out-of-pocket expenses as a result of Defendant's lies. The court finds Ms. Hanrahan's testimony credible. The court finds that Defendant should be ordered under the MVRA to pay Ms. Hanrahan the total of these two amounts, or $8,093.02 in

restitution.[8]

Alternatively, Defendant contends that the trustee cannot be awarded restitution in this case because the specific offense of conviction does not "involve" the trustee. Citing *United States v. Hughley*, 495 U.S. 411 (1990), Defendant contends that the trustee is only entitled to restitution if a defendant is convicted of 18 U.S.C. § 152(1), which criminalizes "knowingly and fraudulently conceal[ing] from a . . . trustee . . . "

Defendant reads *Hughley* too broadly. The issue in *Hughley* was not whether the victim must be listed by name as a victim in the statute of conviction to receive restitution, but rather whether the conduct for which the defendant was convicted in fact caused the victim's loss. *See Hughley*, 495 U.S. at 422 ("Petitioner pleaded guilty only to the charge that he fraudulently used the credit card of Hershey Godfrey. Because the restitution order encompassed losses stemming from alleged fraudulent uses of cards issued to persons other than Godfrey, such portions of the order are invalid."). In this case, Defendant's false statement clearly caused the trustee a lot of extra work and hence thousands of dollars in monetary loss. *Hughley* is inapposite,[9] and restitution is appropriate under the MVRA.[10]

---

[8] The Probation Office calculated the restitution figure at $8,393.02.

[9] It is also worth noting that (1) *Hughley* was not interpreting the MVRA and (2) the defendant in *Lowell* was charged with the same offense as Defendant.

[10] In his sentencing memorandum Defendant notes that the trustee has already "obtained a judgment" against Defendant for $7855.22 by order of the bankruptcy judge. Defendant thus claims the restitution issue is settled, as it is the "law of the case" that Hanrahan is entitled to $7855.22. At the Hearing, the government presented two exhibits that show that the "judgment" Defendant refers to was not a judgment in favor of Hanrahan for unnecessary legal services rendered as trustee, but rather a judgment ordering Defendant to turn over nonexempt funds (certain account receivables) to the trustee for distribution to Defendant's creditors. After such evidence was presented,
(continued...)

14

## V. CONCLUSION

When sentencing resumes, the court shall find that Defendant's base offense level under the advisory Sentencing Guidelines is **6**. USSG §2B1.1(b)(1). The court shall find that Defendant is subject to a **six**-level increase pursuant to USSG §2B1.1(b)(1)(D) for intending a loss exceeding $30,000, a **two**-level increase pursuant to USSG §2B1.1(b)(7)(B) because the offense involved "a misrepresentation or other fraudulent action during the course of a bankruptcy proceeding" and a two-level decrease pursuant to USSG §3E1.1(a) for acceptance of responsibility. This shall result in an adjusted offense level of **12**. Because Defendant is Criminal History Category I and no other adjustments apply, the court shall find that Defendant's advisory Sentencing Guidelines range is 10-16 months. *See* USSG Sentencing Table. Defendant shall be ordered under the MVRA to pay Ms. Hanrahan $8,093.02 in restitution.

**IT IS SO ORDERED.**

**DATED** this 5th day of July, 2006.

_____
LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[10](…continued)
Defendant conceded that his argument was "unfounded."